UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JONAS PHILLIPS, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| vs. | ) Case No. 4:24 CV 890 JMB |
| | ) |
| CHRIS BREWER, | ) |
| | ) |
| Respondent. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on Petitioner Jonas Phillips' petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons set forth below, the petition is **DENIED.** In addition, Petitioner's Motion for an Evidentiary Hearing (Doc. 17) is **DENIED**.

**I.     Procedural Background**

Petitioner is held by the Missouri Department of Corrections pursuant to the judgment and sentence of the Circuit Court of Cape Girardeau County, Missouri. In 2018, a jury convicted him of second-degree murder, first-degree assault, and two counts of armed criminal action (Doc. 15-2, p. 6), and he was sentenced to consecutive terms of life, 15 years', 20 years', and 15 years' imprisonment, respectively (Id. 7). On May 5, 2020, the Missouri Court of Appeals affirmed his conviction and sentence (Doc. 15-7). Following an evidentiary hearing (Doc. 15-11), Petitioner's motion for postconviction relief pursuant to Missouri Supreme Court Rule 29.15 was denied by the trial court (Doc. 15-12, p. 13; Doc. 15-13, pp. 3-10). On September 19, 2023, the Missouri Court of Appeals affirmed the denial of postconviction relief (Doc. 15-16).

Petitioner timely filed his § 2254 petition on June 24, 2024 (Doc. 1). He asserts five grounds for relief including ineffective assistance of counsel.[1] Respondent filed a response in opposition (Doc. 15) to which Petitioner replied (Doc. 20), filed an addendum (Doc. 22), and submitted exhibits A, B, C, and D (Docs. 19 and 20-1), rendering this matter fully briefed.

Petitioner seeks relief from his current and future sentences. Therefore, pursuant to Rule 2(b) of the Rules Governing Section 2254 and 2255 Cases, the Missouri Attorney General, Andrew Bailey, is hereby **ADDED** as a Respondent.

## II.     Factual Background

Petitioner does not challenge the majority of the factual findings of the state courts. Unchallenged factual findings are presumed to be correct and those facts are recounted in this section. 28 U.S.C. § 2254(e)(1). As set forth in the discussion section below, Petitioner does argue that the state courts erred in some of their findings of fact; those arguments will be addressed in that section.

The evidence at trial revealed that Petitioner shot and killed Andrel Dolphin, Jr. and shot and injured Isaac Mahoney after a failed drug transaction (Docs. 15-7 and 15-16). On the night of May 19, 2016, Petitioner and two individuals, Elizabeth Culbertson and Daniel Venable, approached the apartment of Bernadette Mansfield to make a drug deal. They met with Mansfield's daughter, Tashyla Lott, who admitted Venable (whom she knew) but denied entry to Petitioner and Culbertson who returned to Culbertson's car. At the same time, Lott exited the apartment with her boyfriend, Mahoney, and her two younger brothers. What occurred in the apartment is subject to various accounts. It appears, however, that some yelling ensued, and Mansfield exited the apartment and told Lott and Mahoney to return to the apartment and tell Venable to leave. When they returned to the apartment, Lott saw her other brother, Dolphin, and

---

[1] Ground 5 is contained in Petitioner's Memorandum in Support of his Petition (Doc. 11).

his friends, attempt to physically remove Venable from the apartment. Then, everyone left the apartment at the same time; Venable, who did not yell out for help and who did not appear to be injured, was chased out of the apartment building and turned right towards the street in front of the apartment (where Petitioner and Culbertson were in the car); Lott, Mahoney, Dolphin, and Dolphin's friends exited the apartment and turned left in front of the apartment towards the parking lot. Mansfield and the two young boys were already outside of the apartment. Petitioner did not know what occurred in the apartment.

Petitioner started firing his gun towards the group including Lott causing them to run towards a parking lot. A bullet struck Dolphin in the back and exited his chest, but he continued to run; a bullet hit Mahoney and he fell to the ground but got back up and ran towards the parking lot; at the parking lot, Dolphin fell to the ground. Culbertson testified that Petitioner started shooting after Dolphin and his friends had stopped chasing Venable out of the apartment and as they were heading in a different direction from Venable, who by this time was entering Petitioner's car. Dolphin subsequently died but Mahoney survived. Petitioner did not testify at trial.

### III.  Legal Standards

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254(d), allows for habeas relief in Federal court only if the state court's determination:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2). A state court's decision is "contrary to" clearly established law if "it applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or if it

confronts a set of facts that is materially indistinguishable from a decision of [the Supreme Court] but reaches a different result." Brown v. Payton, 544 U.S. 133, 141 (2005). "The state court need not cite or even be aware of the governing Supreme Court cases, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'" Brown v. Luebbers, 371 F.3d 458, 461 (8th Cir. 2004) (citing Early v. Packer, 537 U.S. 3, 8 (2002)). "In the 'contrary to' analysis of the state court's decision, [the federal court's] focus is on the result and any reasoning that the court may have given; the absence of reasoning is not a barrier to a denial of relief." Id.

A decision involves an "unreasonable application" of clearly established law if "the state court applies [the Supreme Court's] precedents to the facts in an objectively unreasonable manner," Brown, 544 U.S. at 141; Williams v. Taylor, 529 U.S. 362, 405 (2000), or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Id. at 406. "Federal habeas relief is warranted only when the refusal was 'objectively unreasonable,' not when it was merely erroneous or incorrect." Carter v. Kemna, 255 F.3d 589, 592 (8th Cir. 2001) (quoting Williams, 529 U.S. at 410–11).

When reviewing whether a state court decision involves an "unreasonable determination of the facts," state court findings of "basic, primary, or historical facts" are presumed correct unless the petitioner rebuts the presumption with clear and convincing evidence. Collier v. Norris, 485 F.3d 415, 423 (8th Cir. 2007) (citations omitted); 28 U.S.C. § 2254(e)(1). Erroneous findings of fact by the state courts do not ensure the grant of habeas relief. Rather, the determination of these facts must be unreasonable in light of the evidence of record. Id.

Page 4 of 19

To prevail on his ineffective assistance of counsel claims, Petitioner must show that his attorney's performance fell below an objective standard of reasonableness and that he was prejudiced thereby. Strickland v. Washington, 466 U.S. 668, 688 (1984). With respect to the first Strickland prong, there is a strong presumption that counsel's conduct falls within the wide range of professionally reasonable assistance. Id. at 689. Thus, "counsel should be strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment," and the "burden to show that counsel's performance was deficient rests squarely on the defendant." Burt v. Titlow, 571 U.S. 12, 22–23 (2013) (quotation marks and citation omitted). Courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Strickland, 466 U.S. at 689; see also Abernathy v. Hobbs, 748 F.3d 813, 816 (8th Cir. 2014) (reviewing court must refrain "from engaging in hindsight or second-guessing of trial counsel's strategic decisions.") (citation omitted)).

To establish the "prejudice" prong, the movant must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "Merely showing a conceivable effect is not enough; a reasonable probability is one sufficient to undermine confidence in the outcome." Paulson v. Newton Corr. Facility, 773 F.3d 901, 904 (8th Cir. 2014) (citation omitted). Although Strickland requires a showing of both deficient performance and prejudice, a "finding that no prejudice exists is sufficient to conclude that counsel was not constitutionally ineffective — [courts] need not first make a determination regarding deficiency." Holder v. United States, 721 F.3d 979, 987 (8th Cir. 2013).

"Taken together, AEDPA and Strickland establish a 'doubly deferential standard' of review." Williams v. Roper, 695 F.3d 825, 831 (8th Cir. 2012) (quoting Cullen v. Pinholster, 563 U.S. 170, 202 (2011)).

> First, under Strickland, the state court must make a predictive judgment about the effect of the alleged deficiencies of counsel on the outcome of the trial, focusing on whether it is "reasonably likely" that the result would have been different absent the errors. Strickland, 466 U.S. at 696. . . . To satisfy Strickland, the likelihood of a different result must be "substantial, not just conceivable." Id. Under AEDPA, [federal courts] must then give substantial deference to the state court's predictive judgment. So long as the state court's decision was not "contrary to" clearly established law, the remaining question under the "unreasonable application" clause of § 2254(d) is whether the state court's determination under the Strickland standard is unreasonable, not merely whether it is incorrect. [Harrington v. Richter, 562 U.S. 86, 112, 101], 131 S. Ct. 770, 792, 785 (2011). This standard was meant to be difficult to meet, and "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. at [102].

Williams, 695 F.3d at 831–32. "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Harrington, 562 U.S. at 105. Furthermore, a state court's findings of fact made in the course of deciding a claim of ineffective assistance of counsel are presumed to be correct. Odem v. Hopkins, 382 F.3d 846, 849 (8th Cir. 2004).

## IV.   Discussion

Petitioner raises five grounds for relief: (1) ineffective assistance of trial counsel for failing to give an opening statement; (2) ineffective assistance of trial counsel for failing to adequately cross examine Mansfield and Lott; (3) denial of a fair trial because the trial court failed to instruct the jury on defense of a third person from a felony; (4) denial of a fair trial because the trial court erred in giving a jury instruction that referred to Mahoney as a bystander instead of as an aggressor; and, (5) ineffective assistance of trial counsel for failing to object to

the prosecutor's opening statement regarding the manner in which Dolphin died. Grounds 3 and 4 will be addressed first, then Grounds 1, 2, and 5.

### A.     Grounds 3 and 4

Petitioner raised Grounds 3 and 4 on direct appeal (Doc. 15-7). He argued that the jury should have been instructed on defense of others premised on a theory that the use of force was necessary to protect Venable from the forcible felonies of robbery, assault, and attempted assault as to the counts of armed criminal action. He further argued that the trial court erred in referring to Mahoney as a bystander instead of as an aggressor in a jury instruction notwithstanding substantial evidence to the contrary. In addressing the first argument, the Missouri Court of Appeals first held that pursuant to state law, "[a] person may use deadly force in defense of a third person if that person reasonably believes that such deadly force is necessary to protect another against any forcible felony" (Doc. 15-7, p. 7). Next, the state court held that "reasonable belief" must be based on "grounds that could lead a reasonable person in the same situation to the same belief" (Id.). As to the felonies identified by Petitioner, the state court held that "the record lacks substantial evidence from which a jury reasonably could find that Phillips knew or even suspected that Venable was being robbed" (Id. 8); that even if a jury could have found that he was being chased, those facts would only show "an attempt to cause physical injury" which is a misdemeanor (assault) and not a forcible felony (Id. 8-9); and, because the "testimony was uncontradicted" that Venable was not being chased, and there was no evidence that Venable was physical injured, there was "no substantial evidence that could support a reasonable belief by Phillips that Venable was threatened with the commission of an assault or attempted assault when Phillips fired his weapon" (Id. 9). Thus, the state court found that the record did not support a finding that Petitioner reasonably believed that Venable was being subjected to a

forcible felony at the time that Dolphin and Mahoney were shot and that the trial court did not err in declining to so instruct the jury.

Petitioner also argued that the trial court erred in characterizing Mahoney as a bystander instead of an aggressor in jury instruction #14 which, he argues, should have been modeled after jury instruction #9.  Both instructions #9 and #14 relate to the murder and assault counts and instruct on the defense of others as to Dolphin and Mahoney, respectively.[2]  The state court found, as set forth above, that there was no evidence that Venable was being chased, assaulted, or threatened at the time of the shooting, or that Mahoney was one of the men who had potentially chased, assaulted, or threatened Venable (Doc. 15-7, p. 9).  As such, the state court found substantial evidence did not support Petitioner's objection to jury instruction #14 and the trial court did not err in its instructions to the jury.

Before this Court, Petitioner argues that the state court unreasonably found the facts in light of the evidence at trial.  He states that the evidence, and reasonable inferences drawn from the evidence, revealed that he had "a reasonable reason to believe that deadly force was needed to protect Venable" (Doc. 11-1, p. 10).  As such, he argues that the state courts erred in finding that he was not entitled to the defense of others to prevent a felony instruction as to the armed criminal action counts.

Jury instruction errors generally do not present a federal due process claim. Estelle v. McGuire, 502 U.S. 62, 71-72 (1991).  To demonstrate that an error in a jury instruction, or the failure to give a tendered instruction, merits habeas relief, Petitioner must show that the error, "so infected the entire trial that the resulting conviction violates due process."  Id. at 72

---

[2] Jury Instructions #9 and #14 are not identical but convey the same law on defense of others.  Instruction #14 states, in addition to what is contained in #9, that: "However, a person's use of force in defense of another person does not justify the reckless use of force against a bystander" and goes on to define recklessness (Doc. 15-2, p. 187-188).

Page **8** of **19**

(quotation marks and citation omitted); see, e.g., Wallace v Lockhart, 701 F.2d 719, 729 (8th Cir. 1983). Petitioner does not challenge the state court's conclusions of law as to the requirements of the felonies at issue. Estelle, 502 U.S. at 67-68 ("It is not the province of a federal habeas court to reexamine state court determinations on state-law questions."); Schleeper v. Groose, 36 F.3d 735, 737 (8th Cir. 1994).

Petitioner speculates that a jury could have reasonably found that he knew that Dolphin and others would rob, assault, and attack Venable and that he was therefore justified in the use of deadly force (Doc. 11-1, p. 5). To support this contention, he refers to Venable's testimony that Dolphin and his friends robbed him in the apartment, that he yelled for people to get off him while in the apartment, that Culbertson testified that she could hear arguing, yelling, and screaming while sitting in the car, that Petitioner was sitting next to her, that she observed Venable running frantically outside of the apartment "while being chased by two men (Tr. 267-268)" (Doc. 11-1, p. 8). He further argues that a jury could have concluded that he also observed everything that Culbertson observed, that he knew that a drug deal had gone wrong, that the other people in and outside the apartment were frantic, and that violence would ensue given the nature of the transaction.

Petitioner is not entitled to relief. First, his rendition of the evidence is speculative. The state courts reasonably found that the evidence revealed that he was not aware that Venable was being subjected to a felony. Petitioner did not know that Venable was being robbed in the apartment and he presents no case authority nor evidence that suggests that a potential drug deal gone wrong necessarily would lead to the felony of robbery. Petitioner's main contention, that Culbertson saw two people chasing Venable "down the sidewalk" does not hold water when the entirety of her testimony is considered. Culbertson testified that she saw "two boys chasing "

Venable but that "[t]hey stopped about the bushes [ ] that was right outside the apartment," "didn't run to the street," and that it looked like they were "trying to chase him off to get them away from their safe spot" (Doc. 15-1, p. 267-268).  From the record, it was reasonable for the state court to conclude that Venable was not being chased at the time Petitioner discharged his weapon.  It was further reasonable for the state court to conclude that no felony assault or attempted assault was occurring.  And, even if a jury could have inferred all the matters advocated by Petitioner, it still would not demonstrate that the state courts unreasonably found the facts in light of the evidence.  That is, there is no showing that the state courts made any error in their recitation of the evidence.

Second, Petitioner does not explain how the state courts erred in finding that jury Instruction #14 was not erroneous.  There is no showing that Mahoney could be categorized as an aggressor based on the evidence at trial.  As such, there is no showing that the state court erred in holding that the evidence did not support a finding that Mahoney was one of the persons who potentially robbed, assaulted or chased Venable.

Third, even if Petitioner is correct in what the jury may have (remotely) found, he has not demonstrated that any error infected the entire trial such that his due process rights were implicated.  Middleton v. McNeil, 541 U.S. 433, 437 (2004) ("[N]ot every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation."); See Iromuanya v. Frakes, 866 F.3d 872, 881 (8th Cir. 2017).  Petitioner has made no showing that the state courts either ignored a faulty jury instruction or that the instructions misled the jury, or that the instructions were otherwise inaccurate or failed to appropriately instruct the jury on the elements of the offenses charged.  It should be noted that a defense of others instruction was tendered to the jury in relation to the murder and assault counts (albeit without the forcible

felony addition) (Doc. 15-1, p. 382, Doc. 15-2, pp. 181-182, 187-188). In light of Petitioner's conviction, the jury simply did not find that Petitioner acted in the defense of Venable in firing his weapon at Dolphin and Mahoney. See Boyde v. California, 494 U.S. 370, 378 (1990) ("[A] single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge." ( citation and quotation marks omitted)). Based on the evidence, no rational jury would have found that Petitioner could have reasonably known that Dolphin and Mahoney were robbing, assaulting, and attacking Venable such that he was justified in the use of deadly force. The state courts did not err in finding that he was not entitled to such a jury instruction. Petitioner is not entitled to federal habeas relief on these Grounds.

**B.      Grounds 1 and 2**

For Grounds 1 and 2, Petitioner alleges ineffective assistance of trial counsel in failing to give an opening statement and adequately cross-examining Mansfield and Lott. Petitioner raised these claims in his Rule 29.15 motion before the state courts. In addressing these claims, the state court of appeals correctly identified the governing Strickland standard, found that Petitioner was not prejudiced in the failure to give an opening statement, and that counsel acted reasonably in the examination of the witnesses. In particular, the state court found that counsel had "mistakenly waived opening statement" but that it would not analyze whether the failure "constituted deficient performance" (Doc. 15-16, p. 3 n. 2). Rather, the state court held that Petitioner failed to present any evidence showing prejudice, that trial counsel did not believe that Petitioner was prejudiced by the lack of an opening statement, and that, in any event, counsel made a closing argument that set forth Petitioner's justification defense theory (Id. 6-7). Further, the state court held that it was reasonable trial strategy for trial counsel to decline to pursue

additional cross-examination of the victim's mother (Mansfield) and the victim's sister (Lott) because to do so would make them more sympathetic (Id. 7-9).

Before this Court, Petitioner argues that the state court erred because it did not address whether the failure to give an opening statement constitutes deficient performance. However, as noted above, a court may address either prong of the Strickland test and need not address both prongs if one is dispositive. Id. 466 U.S. at 697 ("There is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one. In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies."). That is, even if counsel's performance falls below an objective standard of reasonableness, the state court need not reach a conclusion if Petitioner's claim fails because he was not prejudiced as a result. Accordingly, the state court did not err in declining to address deficient performance in light of its finding that there was no prejudice.

Petitioner next argues that the failure to give an opening statement should be "presumed prejudicial." This is not the standard in these circumstances. Petitioner must *demonstrate* that he was prejudiced as set forth in the very case Petitioner cites, Fink v. Lockhart, 823 F.2d 204 (8th Cir. 1987) ("The defendant has the burden of showing that he was prejudiced."). The presumption of prejudice occurs in only limited circumstances and "only where the defendant establishes a constructive denial of counsel." Neels v. Fluke, 109 F.4th 1021, 1031 (8th Cir. 2024) (quotation marks and citation omitted). Petitioner makes no such claim. Petitioner only generally claims that an opening statement is important to offer the jury a roadmap of the defense theory; he offers no evidence or theory that *he* was prejudiced by the lack of an opening

statement.  Id. at 1031 ("Because no presumption of prejudice applies, [Petitioner] must affirmatively prove prejudice." (quotation marks and citation omitted)).  Such general statements are insufficient to show that Petitioner was prejudiced by the lack of an opening statement or that the state courts erred in analyzing this claim.  Moreover, in light of the overwhelming evidence of guilt (as set forth above) and the lack of evidence supporting his defense theory, counsel's failure to give an opening statement was not prejudicial.  And, defense counsel gave a closing argument shortly after the prosecution rested; further undermining Petitioner's claim that he was prejudiced by the lack of an opening statement.

With respect to the cross examination of Mansfield and Lott, Petitioner argues that trial counsel should have elicited testimony on their drug dealing as "their motivation to lie to avoid criminal liability" (Doc. 11, p. 10).  Petitioner contends that had counsel adequately cross-examined these witnesses, "there is a reasonable likelihood the jury would have believed Mr. Venable's testimony, which supported defense counsel's theory that Mr. Phillips was justified in shooting at the group and therefore, would likely have resulted in Mr. Phillips acquittal" (Id.).  Petitioner argues that the state courts "clearly erred" in finding counsel competent.  This claim is likewise without merit.

The state court found that it was reasonable trial strategy to limit cross-examination of the victim's relations because it would make them more sympathetic and could backfire.  The state court found that this strategy was within the broad range of professional conduct permitted by Strickland.  Certainly, "[a]ttacking a witness's credibility and motives are reasonable cross-examination strategies."  Guzman-Ortiz v. United States, 849 F.3d 708, 714 (8th Cir. 2017).  However, attorneys who have prepared for trial are entitled to a strong presumption that their trial decisions are based on sound trial strategy.  Francis v. Miller, 557 F.3d 894, 901 (8th Cir.

2009); United States v. Villalpando, 259 F.3d 934, 939 (8th Cir. 2001). The state court reasonably applied this presumption in finding that counsel articulated a reasonable strategic basis for not impeaching Mansfield and Lott on their prior criminal conduct – he wanted to avoid making the victim's mother and sister appear sympathetic and to avoid any "backfire" that would ensue in attacking their character.

Petitioner has not demonstrated how this finding is "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington v. Richter, 562 U.S. 86, 103 (2011). It is under rare circumstances that counsel will be found ineffective in the cross-examination of witnesses. United States v. Orr, 636 F.3d 944 (8th Cir. 2011) ([W]e consistently have affirmed that a defense counsel's decision not to call a witness is a virtually unchallengeable decision of trial strategy."). Such circumstances occur only when there is a reasonable probability a jury would find a petitioner not guilty if not for counsel's failure to adequately cross-examination a witness. Id. at 952. In this case, there was conclusive evidence that Petitioner shot and killed Dolphin and shot and injured Mahoney as they were running away. On the other hand, there is no or merely scant evidence that he was justified in his actions based on a belief that he needed to protect Venable from imminent harm. Given the dearth of evidence that would support a justification defense, and Petitioner's speculative contention that impeachment of these witnesses would somehow bolster such a defense, counsel's performance was not deficient. Moreover, there is no showing of prejudice. As set forth above, there was no evidence that Petitioner could have been attempting to protect Venable when he fired his weapon; as such, the supposed fact that Mansfield and Lott engaged in criminal behavior prior to and/or during the shooting would not

have led a reasonable jury to believe that Petitioner was not guilty. Petitioner is not entitled to federal habeas relief on these Grounds.

  **C.  Ground 5**

In this Ground, Petitioner states that trial counsel was ineffective for failing to object to the prosecutor's opening statement that Dolphin collapsed and bled to death in the back parking lot after being shot and that the drug transaction only involved Venable selling Hydrocodone pills to Mansfield (Doc. 11, p. 3, Doc. 22, p. 2). Petitioner claims that these statements inflamed the jury and led to an unfair trial. Petitioner acknowledges that this claim was not raised in the state court by his post-conviction counsel. He asserts, however, that cause and prejudice exist to consider the claim in light of post-conviction counsel's ineffectiveness; Petitioner states that he included this claim in his *pro se* brief but that counsel failed to include it in the amended petition (Doc. 22). Petitioner further requests an evidentiary hearing to develop the facts to support this Ground for relief (Doc. 17).

This claim is procedurally defaulted because Petitioner failed to raise it through one complete round of state review. State prisoners seeking habeas relief in federal court are typically limited to raising grounds that have been "fairly presented" in state court proceedings. Deck v. Jennings, 978 F.3d 578, 581 (8th Cir. 2020). Grounds raised in federal court that have not been presented in state court and for which there are no remaining state remedies are procedurally defaulted and should not be considered further. Dansby v. Payne, No. 19-3006 (8th Cir. 2022); Stephen v. Smith, 963 F.3d 795, 799 (8th Cir. 2020). Such procedurally defaulted grounds may nonetheless be considered if a petitioner can demonstrate "cause for the default and actual prejudice as a result of the alleged violation of federal law" or a fundamental miscarriage

of justice (i.e. actual innocence).³  Bousley v. United States, 523 U.S. 614, 622 (1998); Coleman v. Thompson, 501 U.S. 722, 750 (1991); Morgan v. Javois, 744 F.3d 535, 538-539 (8th Cir. 2013).

In Coleman, the Supreme Court clearly stated that "[a]ttorney ignorance or inadvertence is not 'cause' because the attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation, and the petitioner must 'bear the risk of attorney error.'" Id. (citation omitted).  Generally, then, post-conviction counsel's failure to raise this ground for relief cannot be cause to excuse procedural default.  In Martinez v. Ryan, the Supreme Court created a narrow exception to this rule, providing that "a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." 566 U.S. 1, 17 (2012). Subsequently, in Trevino v. Thaler, the Supreme Court expanded this exception, holding that Martinez applies "where ... state procedural framework, by reason of its design and operation, makes it highly unlikely in a typical case that a defendant will have a meaningful opportunity to raise a claim of ineffective assistance of trial counsel on direct appeal." 569 U.S. 413, 429 (2013).

In order to establish cause and prejudice, Petitioner first must show that post-conviction counsel was ineffective in failing to raise this claim.   Petitioner has made no such showing. First, Petitioner is not entitled to an evidentiary hearing to expand the record even though he seeks a Martinez exception to the Coleman rule.  Shinn v. Ramirez, 596 U.S. 366, (2022) (holding that pursuant to 28 U.S.C. § 2254(e)(2), a habeas court may not consider matter outside the pleadings to determine the effectiveness of post-conviction counsel).  In asserting post-

---

³ Petitioner makes no assertion that he is actually innocent.  See Rick v. Harpstead, 110 F.4th 1055, 1059-1060 (8th Cir. 2024).

conviction counsel's ineffectiveness, Petitioner only states that he included this claim in his *pro se* brief but that appointed counsel failed to include it in his brief submitted to the state court. Such an occurrence fails to undermine the presumption that counsel is effective and demonstrate that counsel's actions fell below an objective standard of reasonableness.  Roberts v. Payne, 113 F.4th 801, 814 (8th Cir. 2024).  Accordingly, Petitioner has failed to show cause and prejudice to excuse a procedural default.

Second, even if a hearing were held, any newly developed evidence would never entitle Petitioner to relief.  See Black v. Falkenrath, 93 F.4th 1107, 1009-1110 (8th Cir. 2024).  In the state's opening statement, counsel stated that:

> On May 19th of 2016 Andrel Dolphin, Junior, was shot once in the back as he ran away from a man standing in the street outside of the apartment building where Andrel lived with his family.  The bullet perforated his right lung, and caused massive hemorrhaging.  He made it to the back parking lot where he collapsed and he bled to death internally.
>
> ***
>
> Mr. Venable was there to sell drugs to Andrel's mother Bernadette Mansfield.
>
> Bernadette had set up with [Venable] to buy some hydrocodone pills.  She was addicted to pain pills, so when [Venable] showed up he was just supposed to bring the pills, sell them and leave, but that's not what happened . . . .

(Doc. 15-1, pp. 140).  As to the first statement, Petitioner argues that it inflamed the passions of the jury into believing Dolphin died "in such a horrific manner" (Doc. 11, p. 4).  As to the second statement, Petitioner argues that it was based on Mansfield's supposedly perjured testimony and was false (Doc. 22, pp. 2-4).  Petitioner acknowledges that Mansfield testified consistently with the opening statement and that the court instructed the jury that opening statements were not evidence.  In addition, it should be noted that the forensic pathologist

testified that Dolphin died of a gunshot wound to the back that caused "massive hemorrhaging" (Doc. 15-1, p. 288, 293).

In determining whether counsel's failure to object to an improper opening statement entitles habeas relief, petitioner must show "a reasonable probability that, but for counsel's failure to object, the result would have been different."  Close v. United States, 679 F.3d 714, 718 (8th Cir. 2012) (citation and quotation marks omitted).  There is a presumption that the jury followed the law as instructed by the court, and that any improper statements would have limited effect when there is overwhelming evidence of guilt.  Strickland, 466 U.S. at 694-695.

As set forth above, there was overwhelming evidence of Petitioner's guilt and scant evidence that he was justified in his actions.  The jury was instructed that counsel's statements were not evidence and they are presumed to have followed those instructions.  Finally, the statements of counsel were not false; they were supported by testimony elicited from witnesses.  Petitioner has presented no evidence, that was submitted to the state courts, that any witness offered perjured testimony.  As such, even if there case cause of prejudice to excuse this procedurally defaulted claim, Petitioner would not be able to show that trial counsel was ineffective for failing to object to the prosecutor's opening statement.  Petitioner is not entitled to federal habeas relief on this Ground.

*****

For the foregoing reasons,

**IT IS HEREBY ORDERED** that the Missouri Attorney General, Andrew Bailey, is hereby **ADDED** as a Respondent.

**IT IS FURTHER ORDERED** the petition of Jonas Phillips for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) is **DENIED**. Petitioner's additional request for an evidentiary hearing (Doc. 17) is likewise **DENIED**.

**IT IS FURTHER ORDERED** that no certificate of appealability will be issued because Petitioner has not made a substantial showing of the denial of a constitutional right. See 28 U.S.C. § 2253(c)(2); <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 335-338 (2003) (setting forth the standard for issuing a certificate of appealability).

A separate Judgment will accompany this Memorandum and Order.

<i>/s/ John M. Bodenhausen</i><br>
JOHN M. BODENHAUSEN<br>
UNITED STATES MAGISTRATE JUDGE

Dated this 21st day of January, 2025.